KM

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daryell E. Arnold, Jr., | No. CV 20-01442-PHX-JAT (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

On April 28, 2020, Plaintiff Daryell E. Arnold, Jr., who is confined in the Arizona State Prison Complex-Lewis, filed, through counsel, a civil rights Complaint pursuant to 42 U.S.C. § 1983 in the Maricopa County Superior Court. On June 24, 2020, Plaintiff filed a First Amended Complaint. Defendants State of Arizona and Ryan were served on June 25, 2020, and the remaining Defendants have not yet been served.

On July 22, 2020, Plaintiff filed a Motion for Extension of Time to Serve Defendants (Doc. 3). The Court will grant the Motion for Extension of Time, dismiss Defendant State of Arizona, and order the remaining Defendants to answer the Amended Complaint.

**I.     Removal**

Title 28 U.S.C. § 1441 authorizes removal of any civil action brought in the state court over which the federal district courts would have original jurisdiction. In the Amended Complaint, Plaintiff raises claims pursuant to 42 U.S.C. § 1983. This Court's jurisdiction extends to such claims. *See* 28 U.S.C. § 1331 (a federal court has original

TERMPSREF

jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"). Accordingly, the Court finds removal of this action was proper.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

## III.   Complaint

Plaintiff names the following Defendants in his two-count Amended Complaint: the State of Arizona; former Arizona Department of Corrections (ADC) Director Charles Ryan; Warden Gerald W. Thompson; Assistant Warden Pitz; Correctional Officers II

1   Taylor, Hernandez, and Murphy; Correctional Officer IV Swayne; Sergeant Morkowski;
2   spouses of individual defendants; and John and/or Jane Does I-X.  Plaintiff seeks money
3   damages.

4         Plaintiff alleges that on March 19, 2019, he approached Defendant Hernandez and
5   informed him that he feared for his life because other inmates were threatening to assault
6   and kill him on sight.  (Doc. 1-3 at 18.)  Plaintiff states he has "a documented hit order out
7   on him by the Aryan Brotherhood in Arizona." (*Id.*)  Plaintiff claims Defendant Hernandez
8   tried to talk Plaintiff into returning to the yard, despite the risk, and then "began to get
9   angry and said 'I don't feel like doing paperwork.'"  (*Id.*)  Pursuant to ADC Policy, if an
10  inmate's life is in danger, alternative housing is supposed to be found and the inmate is not
11  supposed to be punished for seeking safety or forced back his current housing
12  assignment. (*Id.*)  Defendant Hernandez issued Plaintiff a Refuse to House disciplinary
13  ticket and sent Plaintiff to a detention unit.  (*Id.*)

14        Plaintiff asserts that because ADC does not have sufficient beds to properly house
15  inmates seeking protection, it discourages inmates from requesting protection by punishing
16  them and housing them in "Refuse to House" units. (*Id.* at 19.)  Plaintiff asserts he was
17  stripped of all of his belongings, visitation privileges, and phone calls.  (*Id.*)  Plaintiff's
18  move was approved by Defendants Swayne and Pitz.  (*Id.*)  While housed in the
19  disciplinary unit, Plaintiff was harassed by officers and issued disciplinary tickets "for not
20  wanting to go back to Buckley where the threat to his health and life came from."  (*Id.*)

21        On April 8, 2019, Plaintiff was forced to return to the Buckley Unit against his
22  will. (*Id.*)  Upon arriving at the Buckley Unit, Plaintiff informed Defendant Morkowski
23  that other inmates in that yard wanted to kill him.  (*Id.*)  Plaintiff claims Defendant
24  Morkowski "out of anger, . . . kept [Plaintiff] in an I.M.O. holding room overnight [until]
25  4/9/2019 and wrote [Plaintiff] a ticket for refus[ing] to house out of fear for his life." (*Id.*)
26  The same day, Plaintiff was sent to the "S.D.U." detention unit, kept in a holding tank, and
27  harassed and threatened by officers.  (*Id.*)
28  . . . .

**TERMPSREF**

- 3 -

On the morning of April 9, Plaintiff was seen by medical staff "due to being kept in a holding tank for 24 hours with no sleep and in fear," was given an EKG, and was advised that his "heart was abnormal due to the excessive stress he was under caused by officers and inmates alike." (*Id.* at 20.) Plaintiff was then interviewed by Defendant Taylor, to whom Plaintiff explained that other inmates wanted to kill him. (*Id.*) Plaintiff asserts Defendant Taylor told Plaintiff he knew of the threat "and didn't care," and that if Plaintiff did not go back to Buckley, Taylor would "house him in S.D.U. with an enemy." (*Id.*) Plaintiff alleges Defendant Taylor told him

> I promise you, you won't get stabbed, I'm going to do my best to talk to my people, my homeboys on the yard and try to squash your problem, but no matter what, you are going to have to fight 1 on 1, no kni[v]es and no one will jump you. But you are going to have to at least fight one on one . . . [Y]ou got two options Arnold, stay in the hole and I house you with an enemy or go to Buckley and handle your business.

(*Id.* at 20-21.)

Plaintiff contends he was forced to house against his will in the Buckley Unit. When he arrived, the cells were open and every inmate was able to walk freely in the pod, unsupervised. (*Id.* at 21.) Plaintiff contends "this situation was known prior to this time by Ryan, CO II Hernandez, CO II Murphy[,] SSU Taylor, CO4 Swayne, Warden and Assistant Warden Pitz." (*Id.*) After Plaintiff had been back in the yard about one hour, two inmates entered his cell and assaulted and beat Plaintiff. (*Id.*) Plaintiff was hit repeatedly with a lock in a sock, knocked unconscious for more than five minutes, stomped on, and hit with closed fists. (*Id.*) Plaintiff suffered a concussion, fractured ribs, a severe facial hematoma, contusions "all over his head and body," lacerations to both ears, and blood loss. (*Id.* at 22.)

Plaintiff claims "CO IV Swayne, SSU Taylor and Warden Pitz, after this event still tried to force move [Plaintiff] back to [the unit] where he almost died." (*Id.*) Plaintiff refused, and was again placed in detention and stripped of all privileges. (*Id.*) Plaintiff contends that even though he was a victim, had no major disciplinary infractions for over

a year, and maintained a kitchen job, Defendant Swayne "still managed to manipulate the system and place him from a close custody to a maximum security inmate." (*Id.*) Plaintiff alleges Defendant Swayne has a history of abusing power by putting inmates in "Max Custody for non-violent offenses." (*Id.*) Plaintiff states he has suffered from numerous instances of administrative retaliation since the attack. (*Id.*) Plaintiff is documented Seriously Mentally Ill (SMI) and in addition to physical injuries, suffered emotional distress due to the incident. (*Id.*)

In Count One, Plaintiff alleges Defendants Ryan, Thompson, Pitz, Taylor, Swayne, Hernandez, Murphy, and Morkowski violated his Eighth and Fourteenth Amendment rights when, with deliberate indifference, they housed Plaintiff in an unsafe unit, knowing inmates could open doors at will, and intentionally failed to protect Plaintiff from assault. (*Id.* at 23.) Plaintiff claims Defendants Ryan and Thompson were aware "of the improper conditions in the Lewis Prison that posed a serious threat to [Plaintiff's] safety and did not correct those conditions." (*Id.* at 24.) Those conditions included the inmates' ability to open doors and exit their cells at any time "in numbers that could not be controlled by the few guards." (*Id.*)

In Count Two, Plaintiff alleges Defendants Ryan and Thompson violated his Eighth Amendment rights by implementing a policy, practice, procedure and/or ratification that resulted in Plaintiff's injuries. Plaintiff claims Defendants Ryan and Thompson had actual knowledge, before Plaintiff was assaulted, that the cells in the Lewis Prison were not safe, inmates could open cell doors at will, and the problem could be solved only by replacing the cell doors. (*Id.* at 25.) Plaintiff further claims Defendants Ryan and Thompson "knew the risk of harm [to Plaintiff] if he was placed back into [his original unit]," but "failed to take reasonable measures to ensure the safety of inmates and knowingly and intentionally did not take measures to ensure the safety of [Plaintiff] from inmates." (*Id.*)

Plaintiff has adequately stated a claim and the Court will require the individual Defendants to answer the Amended Complaint.

. . . .

## IV. Dismissal of Defendant State of Arizona

As described above, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights against the State of Arizona. Although a state may waive its Eleventh Amendment immunity by removing an action to federal court, *see e.g. Pittman v. Oregon, Emp't Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007), the State of Arizona is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the term "person" as used in § 1983 did not include a state or state agency). Accordingly, the Court will dismiss Defendant State of Arizona from this § 1983 action.

## V. Motion for Extension of Time to Serve

Plaintiff states that because of COVID-19 restrictions, his process server was prohibited from meeting Defendants at the Lewis Complex from April 28, 2020, until after July 14, 2020, and is still trying to arrange to meet with individual Defendants. Plaintiff asks that the deadline for service of Defendants be extended 60 days to September 25, 2020. The Court will grant the Motion.

**IT IS ORDERED:**

(1) Defendant State of Arizona is **dismissed** without prejudice.

(2) Defendants Thompson, Pitz, Taylor, Swayne, Hernandez, Murphy, and Morkowski must answer the Amended Complaint (Doc. 1-3 at 15-26) or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 81(c) of the Federal Rules of Civil Procedure.

(3) Plaintiff's Motion for Extension of Time to Serve (Doc. 3) is **granted**.

(4) Plaintiff must either obtain a waiver of service of the summons or complete service of the Summons and Complaint on the unserved Defendants on or before September 25, 2020.

(5) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

(6)   This matter is assigned to the standard track and referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

(7)   If properly completed, the Clerk of Court must issue the proposed Summonses filed at Doc. 4.

Dated this 3rd day of August, 2020.

_____
James A. Teilborg
Senior United States District Judge